HHW

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LANCELOT INVESTORS FUND, L.P.,           )
                                          )
                      Plaintiffs,         )       07 C 4023
                                          )
vs.                                       )
                                          )       Judge David Coar
TSM HOLDINGS, LTD., RANGER                )
CREDIT COMPANY, LLC, RANGER               )       Magistrate Judge Jeffrey Cole
CREDIT PARTNERS II, LTD., DESIGN          )
EXTENDED SERVICE, LTD.,                   )
GEORGE C. MCINGVALE, JR., and             )
DEBORA MCINGVALE,                         )
                                          )
                      Defendants.         )

## MEMORANDUM OPINION AND ORDER

### I

### BACKGROUND

Defendants have lodged two counterclaims against Lancelot: fraud in the inducement of their loan agreement and fraud in the inducement and breach of a post-foreclosure contract, for which damages "in excess of $400,000.00" were pled. Lancelot issued discovery requests for a calculation of these damages on October 19, 2007, meaning that responses were due 30 days later on November 19, 2007. Fed.R.Civ.P. 33(b)(2); 34(b)(2)(A); 36(a)(3). While responses were pending, the court entered an order that discovery would be completed by February 1, 2008. (Dkt. # 37). Defendants' discovery responses – provided on November 19th – included no calculation of damages, but merely reiterated the defendants' claim that they were in excess of $400,000. Lancelot expressed its dissatisfaction, and after a series of unsuccessful conferences to resolve the dispute, it filed a motion to compel on January 3, 2008.

On January 8, 2008, I granted Lancelot's motion, and directed the defendants as follows:

> Supplemental answers to the interrogatories will be provided by 1/14/08. Financial statements and tax returns are to be provided by 1/14/08, and compliance with the remaining outstanding document requests shall be on or before 1/23/08.

(Dkt. # 46). Defendants supplemented their discovery responses on January 14th, but failed once again to provide any support for their damage claim, despite the court's order.

Lancelot deposed defendants, George McIngvale and Debora McIngvale, on January 18th and 30th, respectively. They maintained their claim for damages in excess of $400,000 throughout the depositions, but provided no information in support. On January 23rd, the defendants produced what they claimed to be all remaining documents' responsive to Lancelot's discovery requests. There still was no damages computation beyond the allegation in the counterclaim. Discovery closed a week later.

On February 4th, the parties jointly asked Judge Coar to extend the discovery deadline to February 28 2008, for certain limited purposes, which included the completion of the depositions of the McIngvales "to give testimony related to subsequent documents that defendants are producing in this case that were not available to plaintiff at the time the [McIngvales] were originally deposed. The plaintiff explicitly reserved the right to seek sanctions against the defendant for alleged discovery violations, "including without limitation the dismissal of their counterclaims, attorneys' fees and costs, and such other relief as this Court deems just and proper." (Dkt. # 50). Judge Coar granted the motion (Dkt. # 53).

On February 22, 2008, I entered an order giving the defendants leave to redepose the McIngvales in Chicago with each deposition not to exceed three hours. [Dklt. #61]. On March 3, 2008, Lancelot complained by email to defendants that its "final" production still did not contain any

2

documents supporting their damages claim. Defendants assured Lancelot that they would produce a detailed accounting of damages relating to their counterclaim so that the issue could be addressed during the continued depositions of the McIngvales on March 5, 2008. (*Response to Plaintiff's Motion to Exclude*, at 2). But on that day, before the depositions could begin, defendants informed Lancelot that final calculations had not been completed. (*Id.*, at 3). Significantly, defendants state that before they completed their final spreadsheet, they "could only surmise what the final figure was . . . ." (*Response to Plaintiff's Motion to Exclude*, at 2).

The parties quarreled once again but, according to defendants, "came to an agreement – that was placed on the record – that defendants would provide a final damage calculation by the following Tuesday (March 11) and Mr. McIngvale would appear for deposition – once again in Chicago – the following Wednesday (March 12)." (*Id.*, at 4). Defendants, despite it having been placed on the record, provide no transcript of it. Lancelot attached the transcript to its reply brief, and it indicates that Lancelot reserved the right to object to defendants' supplementing their damage claims. (*Plaintiff's Reply*, Ex. B).

On March 11, 2008, defendants provided Lancelot with what they claimed to be their final damage calculations. The final calculation was, as advertised, in excess of $400,000; very much in excess: $2,029,256.65. Defendants claim that along with the final calculation, they produced support in the form of a spreadsheet and 1000 pages of invoices, receipts, and pay records. (Response to Plaintiff's Motion to Exclude, at 4). Actually, according to their responses on the issue of damages:

> Duplicate copies of the back up documentation . . . are contained in the documents identified as TSM 10243-11390. Additional documentation establishing these damages is contained in the bank statements previously produced to Plaintiff and the

> specific calculation of those expenses have been prepared by Defendants in summary form and are contained in the documents identified as TSM 10243-11390. . . . expenses are detailed in the bank statements previously produced and the documents produced as TSM 0243-11390.

(*Plaintiff's Rule 37 Motion to Exclude Late Disclosed Evidence*, Ex. C, at 19/39, 37/39). But according to Lancelot, as of March 13, 2008, the 1000 pages of documents – TSM 10243-11390 – had yet to be produced. (*Plaintiff's Rule 37 Motion to Exclude Late Disclosed Evidence*, ¶ 21).

Lancelot now moves for an order prohibiting the defendants from introducing into evidence any tardily produced documents or discovery responses or seeking damages in excess of the previously disclosed $400,000 on the counterclaim. The defendants argue that Lancelot had the documentation underlying the defendants' damage claim all along, and thus it is not prejudiced by the fact that the damage calculation was not produced until March 11, 2008.

There is an insouciant quality to the defendants' responsive brief. It cites not a single case in support of its arguments and offers not a single excuse for the defendants' non-compliance with Rule 26 and two court orders, despite the Seventh Circuit's repeated admonition that unsupported arguments are waived,[1] that it is not the role of the court to do a party's work,[2] and notwithstanding the clear requirement of Rule 37(c)(1) that noncompliance with the disclosure requirements of Rule 26 can result in automatic exclusion of evidence in the absence of substantial justification.

---

[1] *See U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 743 (7th Cir 2007); *R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!*, 462 F.3d 690, 701 (7th Cir. 2006); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n. 1 (7th Cir.2004).

[2] *See United States v. Amerson*, 185 F.3d 676, 689 (7th Cir.1999); *United States v. Lanzotti*, 199 F.3d 954, 960 (7th Cir. 1999).

4

# II
# ANALYSIS

## A.
## Defendants Failed to Make Timely Initial Disclosures And Ignored Two Subsequent Deadlines

"We live in a world of deadlines.... The practice of law is no exception."
*Raymond v. Ameritech Corp.*, 442 F.3d 600 (7th Cir.2006)

"Lawyers and litigants who decide to play by rules of their
own invention will find that the game cannot be won."
*United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir.1994)

Throughout the range of the law, there are time limits imposed on parties at every stage of the case. Some are mandatory and admit of no deviations; others are more flexible. But in each instance, parties who do not pay heed to Shakespeare's injunction-- "Defer no time delays have dangerous ends." Henry VI, Part I (1592) Act III, sc. ii 1.33–[3] imperil their own interests. The Seventh Circuit has warned that ignoring deadlines is the surest way to lose a case. *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir.1994). *See also Harris v. Owens-Corning Fiberglass Corp.*, 102 F.3d 1429, 1433 (7th Cir.1996). Even a day's delay can be fatal. *See, e.g., Brosted v. Unum Life Insurance Co. of America*, 421 F.3d 459 (7th Cir.2005); *Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 996 (7th Cir.1996).

In the instant case, the defendants repeatedly failed to produce critical damage information that should have been available to them from the moment the case was filed and to which the plaintiff was undeniably entitled. Rule 26(a)(1)(A)(iii) requires parties to provide initial disclosures by each side, without awaiting a discovery request, of:

---

[3] The Seventh Circuit is partial to Twelfth Night. *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 775 (7th Cir.1995) ("'In delays there lies no plenty.'"). No matter. The point is the same.

5

a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.[4]

The time for making such a disclosure was set by Judge Coar as November 1, 2007. (Dkt. # 37); *see* Fed.R.Civ.P. 26(a)(1)(c). The defendants' failure to have met that deadline prompted Lancelot to make a discovery request for the information, the response to which by the timing of the request was due November 19th. The defendants' response was inadequate, necessitating a motion to compel. I granted the motion and set a new deadline, which regardless of how one interprets the order, was no later than January 23, 2008, and was intended to have been January 14th for damage computations and supporting documentation. The defendants ignored the new deadline as well.

The defendants offer no explanation whatsoever for having missed two consecutive court-imposed deadlines. Instead, they argue that the parties agreed that they would let the required production slide until March 11. First, that is not exactly what the parties agreed. Lancelot had no real choice–"The harm had occurred at the time of the late disclosures, and the bell could not be unrung." *Finwall v. City of Chicago*, 239 F.R.D. 494, 500 (N.D.Ill.2006). Second, Lancelot reserved its right to object to supplementation of the defendants' damages claim. Finally, it is unrealistic to suggest that the agreement, whatever else it was, contemplated a five-fold plus increase in the claim.

While it is true that $2,029,256.65 is "in excess of $400,000," it is an amount so disproportionately greater than $400,000 as to effectively constitute a new damage claim. At a

---

[4] The former provision in force when defendants' disclosures were initially due was not significantly different. Then Rule26(a)(1)(c) required "a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered."

6

minimum, the claim that the damages were "in excess of $400,000" gave insufficient notice that the defendants would ultimately claim damages in excess of $2 million. The lack of adequate notice of the real amount of the damages made all the more urgent timely and complete discovery. The defendants' repeated and inexcusable non-disclosure of the information needed to defend against that claim could scarcely be more incompatible with Rule 26.

Pretrial discovery is one of the most significant innovations of the Federal Rules of Civil Procedure. *See Hickman v. Taylor,* 329 U.S. 495, 500 (1947). Prior to the enactment of the Rules in 1938, the parties had no effective means of discovering information. In fact, it was commonly accepted that "[t]o require the disclosure to an adversary of the evidence that is to be produced would be repugnant to all sportsmanlike instincts." 6 Wigmore, Discovery, 845 at 490 (3rd Ed.1940). *See also* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2001, at 14, § 2002, at 21 (1970). Here is how the Supreme Court put it in *Carpenter v. Winn,* 221 U.S. 533, 540 (1911):

> Another consideration leading to the same conclusion is found in the fact that a bill of discovery [in equity] cannot be used merely for the purpose of enabling the plaintiff in such a bill to pry into the case [at law] of his adversary to learn its strength or weakness. A discovery sought upon suspicion, surmise, or vague guesses is called a 'fishing bill,' and will be dismissed. Story, Eq. Pl. §§ 320 to 325. Such a bill must seek only evidence which is material to the support of the complainant's own case, and prying into the nature of his adversary's case will not be tolerated. The principle is stated by a great authority upon equity thus: 'Nor has a party a right to any discovery except of facts and deeds and writings necessary to his own title under which he claims; for he is not at liberty to pry into the title of the adverse party.' 2 Story, Eq. Jur. § 1490...."

Indeed, it had once been thought that "the amount of damages is not an issue, but follows the determination of the issues in the case, and discovery [through a bill of discovery] is granted only in aid of the issues ."*Munger v. Firestone Tire & Rubber Co.,* 261 F. 921, 923 (2nd Cir.1919).

The long accepted view that once regarded discovery as an intolerable form of prying has

7

been replaced by the modern attitude toward discovery that regards secrecy as uncongenial to truth-seeking and trial by ambush as destructive of the overarching goal that cases be justly determined on their merits. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 253 (1978) (Powell, J., concurring and dissenting); *Hickman,* 329 U.S. at, 500; Rule 1, Federal Rules of Civil Procedure.[5] The defendants' non-compliance with two court orders regarding the deadlines for production – three if the initial disclosure date is counted–cannot be squared with the desideratum of the federal discovery rules.

Courts are entitled -- indeed they must be able – to enforce deadlines. *Reales*, 84 F.3d at 996. "Doing so means the use of sanctions, even severe ones. . ., when parties ignore the ongoing proceedings and demand the right to set their own deadlines. . . . Toleration of delay could string out the case interminably, its pace established by the most slothful of the parties."*Matter of Kilgus,* 811 F.2d 1112, 1118 (7th Cir.1987).

## B.

### Defendants' Late Disclosure Was Neither Justified Nor Harmless

Rule 37(c)(1) provides that "a party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed." The sanction of exclusion under Rule 37(c)(1) is "'automatic and mandatory unless the party to be sanctioned can show that its

---

[5] *See also,* Vanderbilt, Introduction to Cases And Materials On Modern Procedure And Judicial Administration, 42 (1952)(" The fundamental premise of the federal rules is that a trial. . . is an orderly search for truth in the interest of justice rather than a contest between two legal gladiators with surprise and technicalities as their chief weapons....").

8

violation of Rule 26(a) was either justified or harmless.'" *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir.1996). *See also Keach v. U.S. Trust Co.*, 419 F.3d 626, 639 (7th Cir.2005). Like all exclusionary rules, *see New York v. Harris*, 495 U.S. 14, 22 (1990); *United States, v. Doe*, 465 U.S. 605, 617 (1984), Rule 37 has a deterrent purpose. *See Cunningham v. Hamilton County, Ohio* 527 U.S. 198, 208 (1999);*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *Pickholtz v. Rainbow Technologies, Inc.* 284 F.3d 1365, 1376 (Fed. Cir.2002); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1372 (11th Cir.1997)–a goal that is achieved by removing the incentives to disregard the discovery rules.

At bottom, Rule 37 is expressive of the basic axiom of experience that "[l]iability is the beginning of responsibility. The individual is held accountable for what he has done in order that he may be responsive in what he is going to do. Only thus do people gradually learn by dramatic imitation to hold themselves accountable, and liability becomes a voluntary deliberate acknowledgment that deeds are our own, that their consequences from us." John Dewey, *Morals and Conduct*, in Man and Man: The Social Philosophers, 484-485 (J. Cummins and R. Linscott Ed.1954). *See U.S. Freight Co. v. Penn Cent. Transp. Co.*, 716 F.2d 954, 955 (2nd Cir.1983)("General deterrence, rather than mere remediation of the particular parties' conduct, is a goal under Rule 37; unconditional impositions of sanctions are necessary to deter 'other parties to other lawsuits' from flouting 'other discovery orders of other district courts.'").

Here, the defendants offer no excuse; thus, the only question is whether their repeated failures to have complied with Rule 26 and to have met two court-ordered deadlines was harmless. Defendants' response brief states that "it is not clear how the *production* of these documents prejudices Lancelot." (*Response to Plaintiff's Motion to Exclude*, at 7)(Emphasis supplied). What

a curious inversion. It is not the *production* about which the plaintiff complains; it is the extreme *tardiness* of the production that is prejudicial. Fidelity to Rule 26 demanded at least a calculation of the $400,000 figure, followed if necessary by timely supplementation pursuant to Rule 26(e)(1). After all, unless there was a total disregard of Rule 11, the defendants must have calculated at least that amount prior to the filing of the complaint. Nonetheless, there was no initial calculation and no timely supplementation. There was only the unsupported and, as it turned out, substantially understated allegation that the damages were in excess of $400,000.[6]

Consequently, the plaintiff had no way to confirm even that number, and the McIngvales' depositions had to be postponed. (*Response to Plaintiff's Motion to Exclude*, at 7). When the depositions reconvened on March 11th, the damages had soared from "in excess of $400,000" to in excess of $2,000,000. Coming as it did after the close of discovery, disclosure of the supposed support for this amount is palpably unfair and prejudicial to Lancelot. That prejudice is not cured by the disclosure of documents the defendants say (but never prove) was enough to have allowed Lancelot to easily calculate the damages all along. (*Response to Motion to Exclude*, at 6-8). First, Rule 26 requires that the calculation be done by the party claiming damages, not its opponent, who under the defendants' unsupportable theory is left to sift through extensive records of the defendants and guess at what the damage claim is. The primary thrust of 1993 amendments to the Federal Rules of Civil Procedure was to allow parties to rely on their opponent's disclosures as required in Rule 26, to replace the traditional adversary discovery practice. *Bonin v. Chadron Community Hosp.* 163

---

[6] If Rule 26(e) does not give litigants a license to rely on supplements produced after a court-imposed deadline, even if the court's pretrial time limit is satisfied, *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D.Ga.2001), it most assuredly does not excuse a party's lack of diligence and allow it " to ignore the Court's deadlines," reopen discovery, and "claim different damages." *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.* 2007 WL 1589495, *9 (D.D.C.2007).

10

F.R.D. 565, 569 (D.Neb.,1995). The defendants' argument undoes that purpose.

Second, under Rule 34, which is made applicable by Rule26(a)(1)(c), the producing party must make available for inspection and copying the documents or other evidentiary material, not privileged or protected from disclosure, on which the computation of damages is based, as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request. The evidence is compelling that Lancelot could not readily or easily have divined the defendants' claimed damages: after all, the defendants, themselves, failed to make the required computations by November 1, 2007. An additional two-and-a-half months did not cure the problem. Another two months after that elapsed without any results. In fact, despite supposedly having poured over the documentation for about five months, they could only "surmise" what their damages might be. If the defendants, whose records they were, could not make the computations in a timely way based on the documents that the defendants say they produced, Lancelot cannot be expected to have done so.

The determination of whether a Rule 26(a) violation is substantially justified – an issue not addressed by the defendants – or harmless is entrusted to the broad discretion of the district court. Denying the plaintiff's motion would, under the circumstances of this case, be an abuse of discretion and disserve the goal of deterrence that animates Rule 37. The defendants' violations are not rendered harmless because no trial date has been set. If that were the test, most violations of Rule 26 would be outside the reach of Rule 37. If the drafters of the Rule wanted it to be linked to the existence of the trial schedule, they would have said so. In any event, the answer to that argument is *Finwall v. City of Chicago*, 239 F.R.D. 504, 507 (N.D.Ill.2006), *affirming Finwall v. City of Chicago*, 239 F.R.D. 494, 507 (N.D. Ill. 2006):

Finwall seems to argue that the fact that no additional extensions were available was of no moment because no trial date had been set and, as a consequence, plenty of time remained for expert discovery. But, as the magistrate judge correctly concluded, "[l]ate disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen discovery." Order at 11 [citations omitted]. Finwall also prejudiced the court and other litigants by failing to comply with the court's discovery schedule. A court has a legitimate interest in managing each case before it, including enforcing deadlines, to ensure prompt and orderly litigation.... Fulfilling its duty to efficiently manage its docket benefits not only the parties to a particular case, but also the parties to every case pending before the court: delays in one case needlessly tie up the court's docket and impose delays in the court's other cases.

Perhaps Judge Coar might be amenable to reopening discovery to allow Lancelot to again redepose the McIngvales on these recent calculations and supporting documents and to conduct whatever additional discovery on the escalated damage claim might be necessary. But as things now stand, Lancelot's motion is granted and the tardy calculations and purportedly supporting evidence cannot be used at trial pursuant to Rule 37's automatic and mandatory rule of exclusion. Additionally, the defendants must pay "the reasonable expenses, including attorney's fees, caused by [their] failure." Rule 37(c). Finally, Rule 37(c)(1)(B) authorizes as a sanction that the jury be informed of the party's failure to have provided the discovery. That sanction is appropriate in this case.

The plaintiff's motion to exclude late disclosed evidence [#68] is GRANTED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 4/28/08